IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH GRASSO, et al.,** : | | |
|     Appellants, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 13-4308** |
| | : | |
| **MADISON CAPITAL CO.,** | : | |
|     Appellee | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                                                              **MARCH 31, 2014**

Before the Court is Joseph Grasso's appeal from the Bankruptcy Court's Order of June 12, 2013, converting his Chapter 11 case to Chapter 7. Because the Bankruptcy Court's factual findings are not clearly erroneous, its legal conclusions are correct, and it did not otherwise abuse its discretion in converting the case, the Bankruptcy Court's Order will be affirmed.

### BACKGROUND

This appeal is the latest chapter in the ongoing bankruptcy proceedings of the Debtor, Joseph Grasso. An abbreviated history of the case follows to contextualize this Memorandum Opinion.

On February 6, 2012, Joseph Grasso filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. His earliest schedules disclosing creditors revealed at least $2,950,020.19 in secured claims; an unknown amount in unsecured priority claims; and at least $36,169,174.00 in unsecured nonpriority claims. On October 16, 2012, the Bankruptcy Court ordered the appointment of a trustee on creditor Madison Capital's motion, finding that Madison

had demonstrated by clear and convincing evidence "(1) the Debtor's unrelenting dishonesty; and (2) gross mismanagement of estate assets."[1]

On March 22, 2013, Marshall Katz, a creditor, filed a Motion to Convert the case from Chapter 11 to Chapter 7, arguing, among other things, that Grasso had failed to comply with his financial disclosure obligations and was administratively insolvent.[2] Madison filed a memorandum in support of the Katz motion, arguing that substantial and continuing losses to the estate and the impossibility of a successful plan of reorganization required conversion.[3] The Trustee argued that the best interests of the creditors would be served by continuing to have the Trustee oversee the estate in order to develop a plan of reorganization.[4] The Trustee did not give significant details of the contents of the plan in her response, in part because her investigation into the estate was ongoing.[5]

On May 27, 2013, Katz withdrew the Motion to Convert; Madison, however, did not withdraw its argument, and the Bankruptcy Court treated Katz's motion as one by Madison. The Bankruptcy Court held an evidentiary hearing on the motion on May 28, 2013, at which it received documents and witness testimony, including testimony by the Trustee and Charles N. Persing, an accountant for the Trustee. After consideration of the arguments before it, on June

---

[1] *In Re Grasso*, No. 12-bk-11063 (Bankr. E.D. Pa, 2012) Doc. No. 301 at ¶ H . This procedural history relies on the docket below, of which the Court may take judicial notice. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205–206 (3d Cir. 1995).

[2] Bankr. Doc. No. 507.

[3] Bankr. Doc. No. 524.

[4] Bankr. Doc. No. 546.

[5] On appeal, the Trustee now supports affirming the Bankruptcy Court's opinion because "[s]ince the time this case was converted, the Debtor has done nothing to further his efforts to cooperate in the formulation of a confirmable plan of reorganization." Doc. No. 34 at 3.

12, 2013, the Bankruptcy Court converted Grasso's Chapter 11 to Chapter 7.[6] On July 11, 2013, the Bankruptcy Court issued a memorandum opinion explaining the reasons for its order.[7]

## I.   Applicable Law

Chapter 11 of the Bankruptcy Code supplies a process by which debtors may reorganize and emerge from the protection and stewardship of the courts, ideally to the benefit of all relevant stakeholders. Chapter 7 provides for orderly liquidation of debtors' estates, allowing debtors to satisfy creditors to the extent possible and to discharge remaining obligations.

The Bankruptcy Code provides that if a movant, who may be any party in interest, establishes "cause"[8] by a preponderance of the evidence, the Bankruptcy Court *must* convert the case from Chapter 11 to Chapter 7 or dismiss the case, or, if it is in the best interests of the creditors and the estate, appoint a trustee or an examiner.[9] This requirement is subject to an

---

[6] Bankr. Doc. No. 652.

[7] Bankr. Doc. No. 720.

[8] The Code defines "cause" at section 1112(b)(4), with a lengthy, nonexhaustive list of examples, including, as relevant here:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate; . . .
>
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; . . .
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . .
>
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any) . . . .

[9] The Bankruptcy Technical Corrections Act of 2010, Pub.L. No. 111-327, changed 11 U.S.C. § 1112(b) subtly on this point. From 2005 until December 22, 2010, § 1112(b)(1) stated that conversion or dismissal was required once cause was shown "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." Now, § 1112(b)(1) states that the case must be converted or dismissed for cause "unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." The "unusual circumstances" exception has now been moved to § 1112(b)(2). This change clarifies that upon a showing of cause, a court must (subject to § 1112(b)(2) or (c)) either (1) convert or dismiss the case, or (2) appoint a trustee or examiner. *Cf. In re Charles St. African Methodist Episcopal Church of Boston*, 499 B.R. 66, 117 (Bankr. D. Mass.

exception that prohibits the court from converting the case if the nonmoving party can demonstrate that two conditions are satisfied: (1) "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate";[10] and (2) the debtor or another party in interest establishes all of the following three circumstances: (a) "there is a reasonable likelihood that a plan will be confirmed within [applicable] timeframes";[11] (b) "the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) . . . for which there exists a reasonable justification for the act or omission;"[12] and (c) the act or omission "will be cured within a reasonable period of time fixed by the court."[13] If the exception is not satisfied, the court must balance all the interests in the case to determine whether conversion, dismissal, or appointment (or retention[14]) of a trustee or examiner is in the best interests of the creditors and the estate.[15]

---

2013) (appointing an examiner on a showing of cause to convert or dismiss); *In re Cranney*, No. 13-11220, 2013 WL 2383594, at *6 (Bankr. D. Mass. May 30, 2013) (appointing trustee on showing of cause). Before 2010, § 1112(b) could have been read to be in some tension with § 1104(a), which allowed appointment of a trustee for cause, and careful statutory construction was required to harmonize the provisions. The 2010 amendment did not change the burden-shifting analysis that courts had adopted after 2005. *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 96 (3d Cir. 2011); *In re Attack Properties, LLC*, 478 B.R. 337, 342 (N.D. Ill. 2012).

[10] *Id.* § 1112(b)(2)

[11] *Id.* § 1112(b)(2)(A).

[12] *Id.* § 1112(b)(2)(B) & (b)(2)(B)(i).

[13] *Id.* § 1112(b)(2)(B)(ii).

[14] In this case, the Bankruptcy Court had already appointed a trustee, but the statute should be read to allow the court to retain the appointed trustee if doing so is in the best interests of creditors and the estate. A contrary reading would allow a party seeking conversion or dismissal to circumvent a Bankruptcy Court's order appointing a trustee after a motion showed cause to convert or dismiss simply by refiling the motion immediately after the trustee is appointed. Congress could not have meant to create such a loophole. *See, e.g.*, *In re Vaughan Co., Realtors*, No. 11-10-10759, 2013 WL 2244285, at *12 (Bankr. D.N.M. May 21, 2013) ("It is in the best interests of creditors as a whole, and the estate, for the Trustee to continue to serve in this Chapter 11 case rather than to convert this case to a case under Chapter 7.").

[15] 7-1112 Collier on Bankruptcy ¶ 1112.04[7] & n.128 (collecting cases).

A Bankruptcy Court's decision to convert a case from Chapter 11 to Chapter 7 is reviewed for abuse of discretion.[16] Factual findings are reviewed for clear error, but legal determinations are subject to plenary review because "a court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts."[17]

## II. The Bankruptcy Court's Determination

The "cause" that the Bankruptcy Court found for converting the case was primarily "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[18] It concluded that there was substantial diminution of the estate from "(1) the Debtor's postpetition expenses; (2) the sale of the [a]ntique [a]utomobiles; (3) the diversion of the three payments from Curtis Investors, LP; and (4) the estate's negative cash flow."[19] The postpetition expenses that the Bankruptcy Court referred to include "at least $282,870 of estate assets to fund renovations to his personal residence, the expenditure of $25,506 of estate assets at 'Restaurants,' $68,300 of estate assets to purchase an automobile, and $20,000 of estate assets to fund gifts to the Debtor's family."[20] The sale of antique automobiles was a transaction that, like the postpetition expenses, Grasso failed to disclose to the Court.[21] The three payments from Curtis amounted to $341,500 that should have accrued to the estate but that

---

[16] *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012).

[17] *Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 34 F. App'x 818, 823 (3d Cir. 2002) (internal quotation marks omitted); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988) (discussing standards of review).

[18] 11 U.S.C. § 1112(b)(4)(A).

[19] Bankr. Doc. No. 720 at 9. Neither party included the Bankruptcy Court's Memorandum Opinion in support of the Order from which Grasso appeals in the initial record on appeal. However, it is part of the record both by operation of law, Fed. R. Bankr. P. 8006 ("The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court."), and because Madison Capital filed a Motion to Supplement the Record to include the Memorandum, which this Court granted. *In Re Grasso*, No. 14-4308, Doc. No. 31.

[20] Bankr. Doc. No. 720 at 10.

[21] *Id.* at 10–11.

Grasso appropriated to himself (and concealed from the Court).[22] The Bankruptcy Court concluded on the basis of the April 2013 Monthly Operating Report ("MOR") that the estate had a substantial negative cash flow, and it determined that the estate was administratively insolvent, supporting the conclusion that the estate suffered continuing losses.[23]

In a footnote, the Bankruptcy Court also found that certain acts and omissions of Grasso amounted to gross mismanagement of the estate, the harmful and unauthorized use of cash collateral, an unexcused failure to satisfy the Code's reporting requirements, and the failure timely to provide information reasonably requested by the U.S. Trustee.[24] Grasso does not appeal these findings, which form an independent basis to affirm the Bankruptcy Court with respect to its finding of cause to convert. In the interests of completeness and resolving the substance of the disputed issues before the Court, this Court will discuss Grasso's argument that the Bankruptcy Court erred in its conclusions that the estate had experienced substantial or continuing loss or diminution and that there was an absence of a reasonable likelihood of rehabilitation.

### III. Grasso's Arguments on Appeal

Grasso does not dispute the existence and impropriety of the postpetition expenses, the sale of the antique cars, and the diversion of the three payments from Curtis that the Bankruptcy Court relied on in determining cause for conversion existed. Rather, he makes four arguments to attack the Bankruptcy Court's holding: (1) the conclusion that the three transactions contributed to a substantial or continuing loss to or diminution of the estate was clearly erroneous because the April 2013 MOR reveals positive cash flow for April and throughout the life of the

---

[22] *Id.* at 4.

[23] *Id.* at 11–12. The April MOR can be found at Tab 14 to the Record on Appeal filed July 10, 2014, Bankr. Doc. No. 710-2, and at Bankr. Doc. No. 629.

[24] Bankr. Doc. No. 720 at 12 n.11. These actions run afoul of 11 U.S.C. §§ 1112(b)(4)(B), (D), (F), & (H).

bankruptcy; (2) the Bankruptcy Court abused its discretion in failing to consider the testimony of Charles Persing that Grasso's cash position had improved; (3) the Bankruptcy Court committed legal error by failing to address whether there was a reasonable likelihood of rehabilitation under Chapter 11; and (4) conversion was not in the best interests of creditors and the estate.[25] All of Grasso's arguments fail.

## IV. Discussion

### A. The Record on Appeal

Grasso has failed to include an official transcript of the proceedings below as required to make the record adequate to review the Bankruptcy Court's factual determinations.[26] Instead, in his appeal brief, he requested—in a footnote and without citation to any legal authority—that this Court "excuse him from the obligation required under Bankruptcy Rule 8006 to make satisfactory arrangements for the reproduction of the transcript."[27] In his brief, he frequently cited an audio recording of the hearing, which is also not included in the record. His reason for failing to provide a transcript was that "[t]he Debtor does not have funds to pay for reproducing a transcription."[28]

The Court declines Grasso's footnote request to excuse compliance with Rule 8006. Grasso has provided the Court—and the Court's own research has uncovered—no authority to waive the Rule. Grasso had ample opportunity to expand the record in the eight months during

---

[25] Although some of the factors applicable to the question of whether cause for conversion exists overlap with the framework of § 1112(b)(2), the exception to the provision mandating conversion, dismissal, or appointment of a trustee or examiner upon a showing of cause, Grasso does not appeal the Bankruptcy Court's holding that he failed to demonstrate "unusual circumstances" prohibiting conversion.

[26] Fed. R. Bankr. P. 8006 ("Within 14 days after filing the notice of appeal . . . the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented.").

[27] Doc. No. 24 at 6 n.3.

[28] *Id.*

which this case has been pending. This eleventh-hour, unsupported footnote request cannot be granted without creating an unfortunate precedent excusing litigants from the obligation to supply the Court with a record adequate to resolve disputes.[29] This Court is unable to determine whether the Bankruptcy Court clearly erred in its evaluation of the testimony before it without an official transcript. Therefore, the Bankruptcy Court's factual findings with respect to the testimony before it will be affirmed.[30] In the alternative, and to highlight why Grasso should not be afforded an opportunity to cure his failure to file an official transcript, the Court will accept the summaries of the testimony provided in Grasso's brief as accurate representations of the testimony before the Bankruptcy Court and nonetheless hold that the Bankruptcy Court should be affirmed.

  B.  *It was not Clearly Erroneous to Find Substantial or Continuing Loss or Diminution*

Grasso argues that it was clearly erroneous for the Bankruptcy Court to have concluded that the estate was suffering from a continuing or substantial loss. He points primarily to the MOR that details the expenditures and receipts to the estate for April 2013, and he argues that

---

[29] Although it is likely within this Court's authority to give Grasso more time to supply the Court with a transcript of the hearing, no party has requested time to supplement the record, and Grasso and his attorney have disregarded too many deadlines for the Court *sua sponte* to delay this case further by giving Grasso a second bite at the appellate record apple. *See* Doc. No. 23.

[30] *In re Rose*, 483 B.R. 540, 544 (B.A.P. 8th Cir. 2012) ("The record before us therefore comprises only the bankruptcy court's memorandum order and judgment and Debtor's notice of appeal. Significantly, that record does not include an official transcript of the three-day trial before the bankruptcy court. As we are thus unable to review the evidence presented to the bankruptcy court, we cannot conclude the bankruptcy court's findings of fact are clearly erroneous." (internal citation and footnote omitted)); *In re Kritt*, 190 B.R. 382, 387 (B.A.P. 9th Cir. 1995) ("Here, the debtor has filed only 20 pages of excerpts from a transcript that exceeds 50 pages in length. . . . It is impossible for the Panel to review for clear error the court's finding . . . . Accordingly, we affirm the bankruptcy court's findings of fact on the grounds that the debtor has failed to show that they were clearly erroneous."); *In re Eads,* 69 B.R. 730, 734 (9th Cir. BAP 1986) ("Absent a transcript, it is impossible to determine if the trial judge's conclusion . . . was clearly erroneous. Therefore, we have no choice but to affirm on this point."), rev'd in part on other grounds *sub nom. In re Probasco*, 839 F.2d 1352 (9th Cir. 1988) ; *Acosta v. I.R.S.*, 184 B.R. 544, 546 (W.D. Tenn. 1995) ("Although debtors designated the transcript of the bankruptcy court proceeding as part of the record on appeal, it appears they never ordered a copy of the transcript, as required by Bankruptcy Rule 8006. Accordingly, debtors fail to carry their burden of proving that the bankruptcy court's finding . . . was clearly erroneous." (footnote omitted)).

this MOR demonstrates an improved cash position both for April and throughout the life of the bankruptcy. The MOR does indeed reflect that at the beginning of the month, Grasso had $168,295 in cash, and at the end, his cash holdings equaled $251,545. Therefore, a cursory reading of the MOR would support the conclusion that he had positive cash flow of $83,250 (end of month cash balance minus the beginning balance).

However, the third line from the bottom of the MOR's "Individual Debtor Cash Receipts and Cash Disbursements" chart states that Grasso's net cash flow (receipts minus disbursements) was negative $18,456. The apparent discrepancy is resolved by Grasso's intercompany balance (the second and last lines of the same chart), which at the beginning of the month was negative $754,121, and at the end of the month was negative $855,828. The change in his intercompany balance is negative $101,707. The increased liability of the intercompany balance corresponds perfectly with the improved cash position, as subtracting the month's disbursements from the receipts and adding $101,707 equals $83,251—only one dollar more than the difference between the starting and ending cash amounts.[31] In other words, the entire apparent positive cash flow for April 2013 is subsumed by Grasso's intercompany balance, which is listed at the end of the month as a liability of $855,828, approximately $100,000 more deeply in the red than this balance had been on April 1.

Put simply, it appears that Grasso obtained cash from the companies he controlled, and while this acquisition is reflected in the cash line of the MOR (which is more positive at the end of April than the beginning), it is also reflected in the intercompany balance line (which is more negative at the end of April than the beginning). Therefore, even if the Court accepts Grasso's cheerful characterization of his financial situation as having an improved cash position, it cannot

---

[31] The numbers are all on page 3 of the MOR, Bankr. Doc. No. 629. The figures are these: $129,807 – $148,263 + $855,828 – $754,121 = $83,251.

disregard that the changed cash position was accompanied by worsened liabilities that overcome the alleged cash improvement.[32]

Since a careful reading of the April 2013 MOR reveals worsening liabilities, it was not clearly erroneous to conclude that Grasso had negative net cash flow. Looking only at the line of the MOR that represents cash in a bank account at two different points in time does not paint an accurate picture of Grasso's financial position; the Bankruptcy Court was correct to focus on the cash flow as represented by the difference between receipts and disbursements, which unquestionably represents a substantial and continuing loss to the estate.

    C.    *The Bankruptcy Court did not Abuse its Discretion in Failing to Credit Charles Persing's Testimony*

In holding that Grasso had net negative cash flow for April 2013 and for the bankruptcy as a whole, the Bankruptcy Court did not discuss the testimony of Charles Persing, the Debtor's accountant. He testified in line with Grasso's argument that the April 2013 MOR reflected a positive cash flow balance, and that the cumulative cash balance had improved since the filing of the bankruptcy petition.[33] He also testified that Grasso was in the process of formulating a plan of reorganization.

Grasso argues that it was an abuse of discretion not to consider Persing's testimony. However, nothing in the record reflects that the Bankruptcy Court ignored Persing; the judge just did not write about him extensively.[34] There is no obligation for a court to discuss every piece of

---

[32] Similar calculations reveal that throughout the time of the bankruptcy Debtor's improved cash position is merely a reflection of his increasingly significant negative intercompany balance. His cumulative net cash flow ending April 2013 was negative $581,331. Bankr. Doc. No. 629 at 3, third line from the bottom of large table, furthest column to the right.

[33] Br. of Appellant, Doc. No. 24, at 8.

[34] The Bankruptcy Court's Memorandum Opinion does discuss Persing's testimony with respect to his company's fees, which are administrative expenses, Doc. No. 720 at 11–12 n.10, and about the need for outside financing for any plan of reorganization. *Id.* at 6.

conflicting testimony that may be relevant to a given factual dispute. More to the point, it was entirely within the Bankruptcy Court's discretion to choose not to credit Persing's optimistic outlook: he testified about the change in cash position without discussing the way the intercompany balance related to it, and in general, courts have broad discretion to make credibility determinations about witnesses. A permissible inference from Persing's overly breezy summary of the balance sheet is that Persing's testimony should not have been afforded much weight. Therefore, the Bankruptcy Court did not abuse its discretion in declining to discuss the testimony in depth or rely on it in the face of competing facts.

> D. The Bankruptcy Court Committed no Legal Error in its Analysis of § 1112(b)(4)(A)

Grasso argues that the Bankruptcy Court erred by failing to consider whether there was a reasonable likelihood that Grasso's business could be rehabilitated in Chapter 11, as required for a finding of "cause" under § 1112(b)(4)(A). But he is simply wrong in asserting that the Bankruptcy Court did not reach this question. The Bankruptcy Court held: "The administrative insolvency of the Debtor's estate also established the absence of a reasonable likelihood of rehabilitation."[35] For this proposition, the Bankruptcy Court cited *In re American Capital Equipment, LLC*, which held, "Prolonging this case will only burden the estate with mounting attorney and administrative fees. . . . A Chapter 7 bankruptcy can be accomplished more efficiently, thus halting the mounting liabilities against the estate."[36] The Bankruptcy Court also noted that "the 'concept of rehabilitation necessarily hinges upon establishing a cash flow from which current obligations can be satisfied.'"[37]

---

[35] Bankr. Doc. No. 720 at 11.

[36] 688 F.3d 145, 163 (3d Cir. 2012).

[37] Bankr. Doc. No. 720 at 11 (quoting *In re Schriock Const., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994)).

The Bankruptcy Court further held that any plan of reorganization was not likely to be confirmed because any conceivable plan depended on receiving outside funding, and there was not "one iota of evidence in support of the availability of such financing."[38] And even the optimistic Persing conceded that any plan of reorganization would require outside funding.[39] While Persing did testify that he believed that the creditors would recover more under a Chapter 11 reorganization than a Chapter 7 liquidation, the Bankruptcy Court found that the "testimony regarding the availability of outside financing was based entirely on conversations with the Debtor[,and n]o corroborating evidence was provided."[40] Nor has Grasso pointed to any corroborating evidence on appeal.

Grasso argues that the question of whether there is a reasonable likelihood of rehabilitation is broader than the question of whether a plan can be confirmed. This contention is true in general, but here the lack of evidence of the contents of a plan coupled with the absence of evidence supporting the existence of necessary funding for a plan suggest that staying in Chapter 11 would be pointless for the estate and the creditors. The case had been pending for fifteen months before the hearing on the motion to convert, which itself had first been filed two months before the hearing.[41] The Bankruptcy Court found that "[t]he Debtor and the Chapter 11 Trustee offered no details as to what a Chapter 11 plan would entail," and Grasso has provided no details of any plan to this Court nor pointed to any evidence to contradict this finding.[42] Considering the facts that no plan had been proposed, that there were no details before the

---

[38] *Id.* at 5–6.

[39] *Id.* at 6. Grasso does not dispute the Bankruptcy Court's characterization of Persing's testimony on this point.

[40] *Id.*

[41] Bankr. Doc. Nos. 1, 507, 643.

[42] Bankr. Doc. No. 720 at 13.

Bankruptcy Court of even an inchoate plan, that any plan would need outside financing to be confirmed, and that there was no evidence that such financing was available, the Bankruptcy Court was entitled to conclude that Grasso would not be able to put together a confirmable plan and to deduce from this conclusion that the estate would not be rehabilitated in Chapter 11.[43]

The Bankruptcy Court considered both prongs of § 1112(b)(4)(A), and it considered them correctly. Since there was plausible evidence that rehabilitation was unlikely and, so far as appears from the record on appeal, hardly any suggestion that rehabilitation was even possible, the Bankruptcy Court did not abuse its discretion in concluding that Madison had shown by a preponderance of the evidence that there was no reasonable likelihood of rehabilitation.

> E.   *The Bankruptcy Court did not Abuse its Discretion in Determining that Conversion was in the Best Interests of the Creditors and the Estate*

Grasso finally argues that the record before the Bankruptcy Court on the conversion motion clearly established that remaining in Chapter 11 was in the best interests of the creditors and the estate. The Court understands him to argue that even if cause for conversion has been established, the Bankruptcy Court abused its discretion by converting the case rather than reaffirming its order that had appointed the Trustee to oversee the estate in Chapter 11.[44]

In support of this argument, Grasso cites only Persing's testimony which, if credited, would support Grasso's position. But there was also evidence before the Bankruptcy Court that the estate had worsening finances as the case progressed and that any Chapter 11 plan would be

---

[43] *Cf. In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007) ("Further, the Debtor did not offer any documentary evidence at the hearing; no draft plan, no financial projections nor any purchase offers.").

[44] If Grasso means to argue that the Bankruptcy Court erred by not finding under § 1112(b)(2) "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," the Court notes that he still has not made any argument that he has satisfied the other prong of that exception to the conversion or dismissal requirement, that "the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) . . . for which there exists a reasonable justification for the act or omission . . . that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(B).

contingent on outside financing which may well not have been available. It was not abusive for the Bankruptcy Court to credit the representation of worsening liabilities reflected in the MOR in the face of conflicting testimony from Persing, particularly since Persing conceded the need for outside funding and, as appears from Grasso's own appeal brief, was unable to identify the funding's source. Especially because no details of a contemplated plan were before the Bankruptcy Court, it was impossible to determine definitively whether a reorganization would be preferable to a liquidation, and this Court has no basis to find that the Bankruptcy Court abused its discretion in holding that a Chapter 7 liquidation was the better course than merely leaving the Chapter 11 trustee in place.

    *F.*    *Mootness*

Madison and the Trustee argue that the appeal is moot because the Trustee has been diligently administering this case in Chapter 7. Because this Court will affirm the Bankruptcy Court's conversion order, it need not address the mootness arguments.

CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order converting the case from Chapter 11 to Chapter 7 is affirmed. Grasso failed to present any record evidence to suggest that the Bankruptcy Court's factual findings were clearly erroneous, and in any event the record (such as it is) supports the Bankruptcy Court's conclusions. This court therefore cannot hold that the Bankruptcy Court abused its discretion in finding substantial or continuing loss or diminution. Grasso has not appealed the Bankruptcy Court's finding that Grasso's actions amounted to gross mismanagement of the estate, harmful and unauthorized use of cash collateral, unexcused failure to satisfy the Code's reporting requirements, and failure timely to provide information reasonably requested by the U.S. Trustee. Furthermore, the Bankruptcy Court did

not abuse its discretion in determining that conversion was in the best interests of the creditors and estate.

An appropriate Order follows.